IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| SCOTT A. WILLIAMS,<br><br>                    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING THE UNITED STATES' [36] MOTION**<br><br>Case No. 1:14-cv-00102-DBB<br><br>District Judge David Barlow |

        Defendant, the United States of America (the Government), moved under Fed. R. Civ. P. 12(b)(1) to dismiss (the Motion)[1] Plaintiff Scott A. Williams's (Williams) Complaint[2] for lack of subject matter jurisdiction. In addition to opposing the Motion, Williams also requested that the court treat the Motion as a Fed. R. Civ. P. 56 motion for summary judgment instead of a Rule 12 motion to dismiss.[3] After the Government filed its final reply,[4] the court advised the parties that it would convert the Motion into a Rule 56 summary judgment motion.[5]

        Pursuant to the discretion set forth in DUCivR 7-1(f), the court has determined that hearing oral argument on the Motion is unnecessary. For the following reasons, the Motion is GRANTED.

---

[1] United States' Motion to Dismiss, ECF No. 36, filed October 25, 2019.

[2] Notice of Removal, Attachment 1, Complaint at 7-12, ECF No. 4, filed August 26, 2014.

[3] Plaintiff's Reply Memorandum to Defendant's Motion to Dismiss Plaintiff's Complaint (Opposition) at 1-2, ECF No. 39, filed December 6, 2019.

[4] Memorandum in Support of Motion to Dismiss Plaintiff's Complaint (Reply), ECF No. 40, filed December 20, 2019.

[5] Docket Text Order, ECF No. 43, filed March 6, 2020.

## PROCEDURAL BACKGROUND

Williams is a former employee of government contractor STS Systems Integration (SSI).[6] Williams originally filed his complaint, which contains a single cause of action of "tortious interference with actual and/or prospective economic relations" against Chalon Keller (Keller), in Utah state court.[7] Williams alleges that Keller, who was a Hill Air Force Base employee at the time, interfered with the corrective disciplinary action that SSI was taking against Williams in early 2013.[8] Specifically, Williams contends that Keller—for reasons of "personal animus"—demanded that SSI terminate Williams's employment entirely instead of suspending him temporarily without pay.[9]

In response to Williams's complaint, the Government invoked the Federal Torts Claims Act (FTCA) and certified—through the United States Attorney—that Keller was acting within the scope of her employment.[10] Upon this certification, the FTCA provides that the government is substituted as the defendant and the case is removed to federal court.[11] In the Motion, the Government argues that because it has not waived its sovereign immunity as to Williams's cause of action, the court lacks subject matter jurisdiction and the case must be dismissed.[12]

In addition to challenging the Government's certification regarding Keller (by contending that Keller's actions were not within the scope of her federal employment) Williams maintained in his Opposition that the Motion should be converted to a Fed. R. Civ. P. 56 motion for

---

[6] Motion at 2.

[7] *Id.* at 4.

[8] *Id.* at 3-4.

[9] *Id.* at 4.

[10] *Id.* at 2.

[11] 28 U.S.C. § 1346(b)(1).

[12] *Id.* at 2.

summary judgment. Citing the Tenth Circuit case *Holt v. United States*,[13] Williams argued that "when the disposition of the jurisdictional question is intertwined with the merits of the case[,]"[14] as it can be in FTCA cases, the district court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion.[15] Although the Government asserted that this conversion was unnecessary, it nevertheless argued that summary judgment in its favor under a Rule 56 standard would be appropriate given the undisputed facts.[16]

The court determined that it was appropriate in this instance to convert the Government's Motion to a Rule 56 motion for summary judgment.[17] The court notified the parties that, based on this conversion, they would be permitted to submit additional material for consideration.[18] In response, the parties indicated that they were prepared to submit the Motion for decision under a Rule 56 standard based on the state of the briefing across the Motion, the Opposition, and the Reply.[19]

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier

---

[13] 46 F.3d 1000 (10th Cir. 1995).

[14] Opposition at 12, citing *Hol*t, 46 F.3d at 1003.

[15] Opposition at 12.

[16] Reply at 8-9.

[17] Docket Text Order, ECF No. 43, filed March 6, 2020.

[18] *Id.*

[19] Joint Response to Order Regarding Additional Briefing, ECF No. 34, filed March 17, 2020.

[20] Fed. R. Civ. P. 56(a).

of fact could resolve the issue either way."[21] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[22]

## FINDINGS OF UNDISPUTED FACTS[23]

1. During 2012 and until May 15, 2013, Williams was a F-16 Aircraft Configuration Management Specialist employed by SSI at its Hill Air Force Base office.[24]

2. During 2012 and extending into 2014, SSI was a named Hill Air Force Base military contractor within a F-16 International Integrated Logistics Support contract with the United States Air Force's (USAF) Air Force Life Cycle Management Center.[25]

3. SSI contracted to provide F-16 aircraft acquisition and sustainment technical, logistics and parts/component support for F-16 aircraft which were then being acquired by the Indonesia Air Force (IDAF).[26]

4. The Air Force Lifecycle Management Center acquisition and sustainment program activities for the Indonesia sales program were administered by the Hill Air Force Base F-16 International Branch.[27]

5. Throughout 2012 and 2013, Ms. Keller occupied the GS-14 Deputy Director position within the Hill Air Force Base F-16 International Branch.[28]

---

[21] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[22] *Id.*

[23] The parties' briefing included several purported undisputed material facts that are not included here because the court determined they were not material to the resolution of the Motion.

[24] Opposition at 4.

[25] *Id.*

[26] *Id*.

[27] *Id*.

[28] *Id.*

6. During a March 2013 conference in Indonesia, USAF employee Heidi Gibson observed Williams give an IDAF officer a U.S. computer hard drive to download documents from the hard drive.[29]

7. The documents included a cockpit illustration that was not authorized for disclosure to the IDAF.[30]

8. On May 8, 2013, Ms. Gibson met with her supervisor, Ned King, to discuss some concerns about her working relationship with Williams.[31]

9. During the conversation, Ms. Gibson disclosed to Mr. King that Williams had transferred USAF documents to an IDAF officer during the March 2013 conference.[32]

10. Mr. King notified his supervisor, Keller.[33]

11. The following day, May 9, 2013, Keller and Mr. King met with Donalene Knowley, the security manager over the F-16 foreign sales program.[34]

12. During the meeting, Ms. Knowley called Williams to her office to discuss Williams's actionsr. Williams acknowledged that he had committed a violation when he allowed the IDAF officer to view and download the documents from the U.S. hard drive.[35]

13. Ms. Knowley advised Williams to report the incident to his supervisor.[36]

---

[29] Motion at 5.

[30] *Id.;* Opposition at 7 (Williams's response that this disclosure was "a harmless error which nonetheless required immediate correction" does not create a genuine issue of material fact as to the lack of authorization to disclose this information.).

[31] Motion at 5. (Undisputed).

[32] *Id.* (Undisputed).

[33] *Id.*

[34] *Id*.

[35] *Id.;* Opposition at 9 (Williams's response that "the term 'security violation' was expressed" during this meeting does not create a dispute of material fact as to Williams's acknowledgement of his violation.).

[36] *Id.* at 5-6.

14. Williams submitted a statement dated May 10, 2013, to SSI's security manager in which he divulged his error in sharing several pages of a U.S. Air Force cockpit illustration that the IDAF officer was not authorized to have.[37]

15. Ms. Knowley instructed Keller and Mr. King to notify the Air Force's contracting office of the security violation, and they immediately notified Clayton Archuleta, the F-16 foreign military sales contracting officer at Hill Air Force Base.[38]

16. They did so because the contracting officer is the designated Air Force official who communicates with contractors regarding issues that may affect the contract relationship.[39]

17. Mr. Archuleta then discussed the matter with Ms. Knowley, who advised him to notify Williams's employer of the incident.[40]

18. On the following Monday, May 13, 2013, Mr. Archuleta emailed a letter to Steve Doneghy, SSI's general manager, in which he informed Mr. Doneghy of Williams's security violation and asked Mr. Doneghy to outline the steps that SSI would take to prevent such events in the future.[41]

19. Keller did not participate in the preparation of that letter.[42]

20. Later that day, Mr. Doneghy emailed a response to Mr. Archuleta's letter.[43]

---

[37] *Id.* at 6.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.* at 6-7.

[42] *Id.* at 7; Opposition at 10 (Williams's Response cites to evidence that does not create a dispute.).

[43] Motion at 7.

6

21. Mr. Doneghy advised Mr. Archuleta that Williams would be reprimanded and suspended without pay for one week, and that SSI would take corrective measures including a training session for SSI employees and changes to internal security procedures.[44]

22. Mr. Archuleta considered Mr. Doneghy's plan to be an appropriate response to his request for corrective action.[45]

23. The following day, May 14, Mr. Doneghy notified Mr. Archuleta by email that there was a change of plan.[46]

24. Mr. Doneghy advised Mr. Archuleta that he had decided to fire Williams based on "[s]ome new information [that] has come to my attention concerning Mr. Williams performance and business acumen that do not meet SSI standards."[47]

25. Mr. Doneghy did not disclose to Mr. Archuleta what "new information" had come to light that caused him to decide to fire Williams.[48]

26. In a deposition, however, Mr. Doneghy explained that after presenting his initial plan for corrective action, he received information about Williams that he had not previously been aware of.[49]

27. Specifically, Mr. Doneghy's deputy, Dan Beard, told him that Williams had a history of inconsistencies in his timekeeping and unauthorized use of his company credit card. Mr.

---

[44] *Id.*

[45] *Id.*

[46] *Id*.

[47] *Id.*

[48] *Id*.

[49] *Id.*

Doneghy decided that the combination of these factors with the recent security violation warranted Williams's termination.[50]

28. Mr. Doneghy testified that his only communications with the Air Force about Williams's status were with Mr. Archuleta, and that he had no communication with Keller regarding Williams.[51]

29. Mr. Doneghy's deputy, Mr. Beard, also did not have any contact with Keller about Williams.[52]

30. Mr. Doneghy traveled to Hill Air Force Base on May 15, 2013 and presented termination papers to Williams.[53]

## DISCUSSION

Under the FTCA, if a plaintiff brings a tort claim against a federal employee and alleges some wrongful act or omission by that employee, the claim must proceed against the United States in federal court if that federal employee was acting in the scope of his or her employment.[54] The United States Attorney possesses the authority to review a report of the actions of the federal employee and certify that he or she was acting within the scope of employment.[55] This certification "conclusively establish[es] scope of office or employment for purposes of removal" to federal court.[56]

---

[50] *Id.*

[51] *Id.* at 8.

[52] *Id.*

[53] *Id.*

[54] 28 U.S.C. § 1346(b)(1).

[55] 28 C.F.R. § 15.3(a); 28 U.S.C. § 2679(d)(2).

[56] 28 U.S.C. § 2679(d)(2).

After removal, the case proceeds against the United States under the FTCA.[57] Generally, the United States enjoys sovereign immunity from suit, except in those limited circumstances where it has waived this immunity.[58] While the FTCA identifies certain circumstances where the Government has waived its immunity,[59] the United States has not waived its sovereign immunity against "[a]ny claim arising out of . . . interference with contract right."[60] The Tenth Circuit has determined that allegations of interference with current or future employment relationships fall within the FTCA's exclusion of claims for "interference with contract rights."[61] When the United States has not waived its sovereign immunity against a claim, federal courts lack subject matter jurisdiction over it and the claim must be dismissed.[62]

Here, the Government argues that Williams's claim against Keller was appropriately certified to proceed under the FTCA with the Government substituted as the defendant because Keller was acting within the scope of her federal employment.[63] And because Williams's tortious interference with economic relations cause of action is not one against which the Government has waived its sovereign immunity, the Government contends it is immune and the case must be dismissed for lack of subject matter jurisdiction.[64]

In response, Williams concedes that the Government's argument as to sovereign immunity is correct as he offers no argument that his tortious interference with economic

---

[57] *Id.*

[58] *Garling v. United States Envtl. Prot. Agency*, 849 F.3d 1289, 1294 (10th Cir. 2017).

[59] 28 U.S.C. § 1346(b)(1).

[60] 28 U.S.C. § 2680(h).

[61] *Aviles v. Lutz*, 887 F.2d 1046, 1049 (10th Cir. 1989).

[62] *Haceesa v. United States*, 309 F.3d 722, 728 (10th Cir. 2002).

[63] Motion at 1.

[64] *Id.*

relations cause of action is excepted from governmental immunity.[65] Nevertheless, Williams argues that the Motion cannot be granted because the Government's certification was inappropriate.[66]

A plaintiff is entitled to challenge the Government's certification regarding the actions of a federal employee.[67] But because the Government's certification is prima facie evidence that the employee was acting within the scope of his or her employment, the *plaintiff* carries the burden of demonstrating that the federal employee was not.[68] Within the context of the FTCA, a federal employee's scope of employment is determined by reference to the law of the state where the events alleged in the complaint occurred.[69] As the events occurred on Hill Air Force Base in Utah, Utah law applies.

The Utah Supreme Court has set forth three factors for use in examining whether an employee's conduct is within his or her scope of employment: (1) whether the employee's conduct is of the general kind she is employed to perform; (2) whether the conduct in question occurred during normal work hours and in the ordinary work location; and (3) whether the employee's conduct was motivated by an intent to further the employer's interest.[70] As detailed in the following section, Williams has failed to carry his burden to demonstrate that Keller's actions do not comport with these three factors.

---

[65] Reply 1.

[66] Opposition at 13.

[67] *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 436 (1995).

[68] *Richman v. Straley*, 48 F.3d 1139, 1145 (10th Cir. 1995).

[69] *Id.*

[70] *Birkner v. Salt Lake City*, 771 P.2d 1053, 1056-57 (Utah 1989).

### 1. Williams Has Failed to Demonstrate that Keller's Actions Were Not Motivated by an Intent to Further the Government's Interest

Williams concedes that the first and second factors are met as to Keller's actions as he only focuses on the third.[71] As to the third factor, Williams argues that Keller's conduct was not motivated by the intent to advance the Government's interest.[72] Williams's primary contention on this point is that, pursuant to the terms of SSI's contractual relationship with the Government, there was a plan to address deficiencies in SSI's performance.[73] Keller's actions, according to Williams, departed from this plan, therefore showing that her actions were outside the scope of her employment.[74]

Williams asserts that the "evidence is strong" that Keller "directed the drafting and preparation" of the letter that Clayton Archuleta sent to SSI director Steve Doneghy.[75] But Williams does not support this assertion with a citation to any undisputed fact. Nor does Williams argue how these actions—if they were taken—were motivated by something other than Keller's intent to further the government's interest in maintaining the security of certain information.

Williams also offers that, when he was informed by Doneghy that his employment with SSI was terminated, Doneghy stated that "she wanted you gone."[76] Presumably, this is a reference to Keller. Doneghy's statement to Williams about something Keller may have said is inadmissible hearsay. Williams also fails to articulate why Keller might have been motivated by

---

[71] Opposition at 14.

[72] *Id.*

[73] *Id.* at 14-15.

[74] *Id.* at 15.

[75] *Id.*

[76] Opposition at 11.

something other than furthering the Government's interest. In the face of the undisputed facts that the concerns relating to Williams's performance were addressed through a chain of authority, Williams has not carried the burden here to demonstrate that Keller's actions were specifically motivated by something other than concern for the Government's interests.

Furthermore, the undisputed facts demonstrate that Williams's employment was terminated for reasons independent of Keller's alleged actions. It is undisputed that SSI director Doneghy made the decision to terminate Willaims's employment instead of taking other corrective action after being informed by a deputy that Williams had a history of inconsistencies in his timekeeping and had made unauthorized use of an SSI credit card.[77] Williams's claim against Keller is wholly untenable based on the evidence provided to the court.

Therefore, the undisputed facts demonstrate that the Government's certification was correct: Keller's actions were within the scope of her employment. Substitution of the Government as the defendant and proceeding under the FTCA was appropriate. And Williams's single cause of action is not one against which the Government has waived its sovereign immunity. Summary judgment for the government is warranted.

---

[77] Undisputed fact 27, supra at 8.

something other than furthering the Government's interest. In the face of the undisputed facts that the concerns relating to Williams's performance were addressed through a chain of authority, Williams has not carried the burden here to demonstrate that Keller's actions were specifically motivated by something other than concern for the Government's interests.

Furthermore, the undisputed facts demonstrate that Williams's employment was terminated for reasons independent of Keller's alleged actions. It is undisputed that SSI director Doneghy made the decision to terminate Willaims's employment instead of taking other corrective action after being informed by a deputy that Williams had a history of inconsistencies in his timekeeping and had made unauthorized use of an SSI credit card.[77] Williams's claim against Keller is wholly untenable based on the evidence provided to the court.

Therefore, the undisputed facts demonstrate that the Government's certification was correct: Keller's actions were within the scope of her employment. Substitution of the Government as the defendant and proceeding under the FTCA was appropriate. And Williams's single cause of action is not one against which the Government has waived its sovereign immunity. Summary judgment for the government is warranted.

---

[77] Undisputed fact 27, supra at 8.

## ORDER

IT IS HEREBY ORDERED that the Motion[78] is GRANTED. SUMMARY JUDGMENT in favor of the United States of America and against Plaintiff is entered.

The clerk is directed to close the case.

Signed June 8, 2020.

BY THE COURT

David Barlow
United States District Judge

---

[78] United States' Motion to Dismiss, ECF No. 36, filed October 25, 2019.